VIRGINIA:



FILED
MAY -5 2014
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE CIRCUIT COURT OF THE CITY OF NORFOLK

VIRGINIA STATE BAR EX REL
SECOND DISTRICT COMMITTEE
VSB Docket Nos.   12-021-086444
                  12-021-091597

Complainant

v.                                          Case No. CL13-3441

JOHN WESLEY BONNEY

Respondent

### MEMORANDUM ORDER

THIS MATTER came to be heard on February 26, 2014, before a Three-Judge Circuit Court duly impaneled pursuant to Section 54.1-3935 of the Code of Virginia, 1950, as amended, consisting of the Honorable H. Thomas Padrick, Jr., Judge of the Second Judicial Circuit, Chief Judge presiding ("Chief Judge"), the Honorable Aundria Deloris Foster, Retired Judge of the Seventh Judicial Circuit, and the Honorable Westbrook J. Parker, Retired Judge of the Fifth Judicial Circuit (collectively the "Panel"). The Virginia State Bar appeared through Assistant Bar Counsel M. Brent Saunders. Respondent appeared in person and through his counsel, Leslie A.T. Haley and Elliott P. Park.

WHEREUPON, a hearing was conducted upon the Rule to Show Cause issued against Respondent, which Rule directed Respondent to appear and show cause why his license to practice law in the Commonwealth of Virginia should not be suspended or revoked, or why he should not otherwise be sanctioned by reason of allegations of ethical misconduct set forth in the Certification issued by a Subcommittee of the Second District Committee of the Virginia State Bar.



1

The Chief Judge swore the court reporter and polled the members of the Panel to determine whether any member had a personal or financial interest that might affect or reasonably be perceived to affect his or her ability to be impartial in these matters. Each member, including the Chief Judge, verified they had no such interests.

The Panel: i) accepted the parties' Stipulations; ii) admitted all of the bar's exhibits without objection; and iii) admitted all of Respondent's exhibits with the exception of Respondent's exhibit number 12 to which the bar's timely filed objection had previously been sustained.

The Panel granted the bar's motion to withdraw the violation of Rule 1.15(a) of the Virginia Rules of Professional Conduct charged in VSB Docket No. 12-021-091597 for the reasons stated on the record.

Following opening statements on behalf of the parties, the bar then presented its evidence.

At the conclusion of the bar's case, Respondent moved to strike the evidence as to each of the allegations of misconduct charged in this case. Following the receipt of arguments from the parties and deliberation, the Panel overruled Respondent's motion to strike in its entirety.

Respondent then presented his evidence.

At the conclusion of Respondent's case, the parties made their closing arguments to the Panel.

Following deliberation, and upon consideration of the evidence and arguments presented, the Panel unanimously found by clear and convincing evidence the following material facts and violations of the Virginia Rules of Professional Conduct:



## MATERIAL FACTS

1. At all times relevant hereto, Respondent was an attorney licensed to practice law in the Commonwealth of Virginia.

### 12-021-086444

2. In early 2009, Respondent undertook to represent Shon M. Walter ("Walter") in connection with a federal investigation into Walter's alleged possession of child pornography.

3. In April 2009, Walter was indicted on 10 counts of receipt of child pornography in the United States District Court for the Eastern District of Virginia (Norfolk Division) (*United States v. Shon M. Walter* (2:09cr44)).

4. On May 19, 2009, Walter entered into a written Plea Agreement pursuant to which he agreed to plead guilty to 2 counts of receiving materials containing child pornography and the United States agreed to move to dismiss the 8 remaining counts of the indictment. The Plea Agreement stated "[t]he maximum penalty for this offense is a mandatory minimum term of imprisonment of five (5) years [and] a maximum term of imprisonment of twenty (20) years.

5. On June 1, 2009, the Court accepted the plea agreement and Walter's pleas of guilty to two counts of receiving materials containing child pornography and found Walter guilty of those two offenses. The case was continued in order to allow a presentence investigation to be completed.

6. Each of the two offenses to which Walter pled guilty carried a minimum sentence of 5 years imprisonment and a maximum sentence of 20 years imprisonment.

7. On August 3, 2009, a Presentence Investigation Report was issued setting out a sentencing guideline range of 360-480 months imprisonment, which was calculated in part on a

sentencing guideline enhancement premised on Walter allegedly engaging in a pattern of activity involving the sexual exploitation of a minor.

8.  In August 2009, Respondent filed a position paper in which he set out mitigating factors and requested a downward departure from the sentencing guidelines based on Walter's "addictive behavior and unstable childhood" and acceptance of responsibility for his criminal actions.

Respondent never objected to any sentencing guideline enhancement, including the enhancement premised on Walter allegedly engaging in a pattern of activity involving the sexual exploitation of a minor nor researched the applicability of that enhancement.

9.  On September 8, 2009, a sentencing hearing was held before The Honorable Jerome B. Friedman ("Judge Friedman"). At the conclusion of the hearing, Judge Friedman departed from the guidelines and sentenced Walter to 276 months imprisonment based on the finding that Walter had accepted responsibility for his criminal actions.

10. In August 2010, Walter filed a *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody ("Motion") in which he requested relief from his prison sentence on multiple grounds including ineffective assistance of counsel by Respondent.

11. In April 2011, the Court denied the Motion as to all grounds except for Walter's claim that Respondent had provided him ineffective assistance of counsel by, *inter alia*: i) not accurately advising him of the maximum term of imprisonment he could receive by pleading guilty to the 2 counts of receiving child pornography; and ii) failing to challenge the sentencing guideline enhancement premised on Walter allegedly engaging in a pattern of activity involving



the sexual exploitation of a minor. The Court deferred disposition of Walter's ineffective assistance of counsel claim pending briefing and appointed new counsel for Walter.

12. On May 11, 2011, the United States filed a response to the Motion to which it attached an affidavit signed by Respondent on May 2, 2011, in which Respondent stated, *inter alia*, that he "went over with Mr. Walter that he was facing up to 40 years for these 2 counts well in advance of the plea agreement. Mr. Walters [*sic*] was clearly aware of this maximum term he was facing. I went over the sentence with him before he signed his plea agreement and he fully understood that he was facing 40 years in prison."

13. On August 4, 2011, Judge Friedman presided over an evidentiary hearing on the ineffective assistance claim set out in the Motion.

Walter testified consistent with his Motion that Respondent had told him that the maximum prison sentence he could receive as a result of pleading guilty to the two counts of receiving child pornography would be 20 years, but he would likely be sentenced in the 97-121 months range. Walter said he was not aware he could receive in excess of 20 years imprisonment until after he saw the sentencing guideline range of 360-480 months imprisonment set out in the Presentence Investigation Report issued on August 3, 2009.

Respondent was called as a witness for the United States and testified that he told Walter before he signed the Plea Agreement he was facing a maximum of 40 years imprisonment if he entered into the Plea Agreement. Respondent also testified that: i) prior to representing Walter, he had not previously handled a federal child pornography case and had handled only "a couple" of federal criminal cases at the post-conviction stage; ii) he had received no formal training on the federal sentencing guidelines; iii) he could not say whether he had researched the pattern of activity involving the sexual exploitation of a minor sentencing enhancement; and iv) he

believed the United States Attorney could dismiss or withdraw one of the two counts months after the Plea Agreement had been accepted by the Court and continued to negotiate the dismissal of one of the counts with the United States Attorney following the Court's acceptance of the Plea Agreement[1].

14. Respondent's statements in his May 2, 2011 affidavit and during his testimony at the August 4, 2011 hearing regarding the advice he had provided to Walter as to the maximum possible period of incarceration he was facing if he entered into the Plea Agreement were directly contradicted by correspondence Respondent had personally authored during his representation of Walter consisting of:

- Emails from Respondent to Walter's wife[2]:

i) Dated April 14, 2009, in which Respondent stated the sentencing guidelines called for a prison sentence in the 97-121 months range;

ii) Dated May 19, 2009, in which Respondent stated Walter had signed the plea agreement and was facing a minimum of five years and a maximum of 20 years imprisonment; and

iii) Dated May 26, 2009, in which Respondent stated he hoped Walter would receive the minimum prison sentence of five years;

and

- An August 12, 2009, letter Respondent sent to Stoker, in which Respondent stated "we were under the impression that [the plea for five to 20 years] encompassed both counts . . . I'm in

---

[1] When Respondent testified during the August 4, 2011 hearing that he continued to negotiate the dismissal of one of the counts with the government following the Court's acceptance of the Plea Agreement, Randy C. Stoker, the Assistant United States Attorney assigned to handle Walter's case ("Stoker"), expressed to Judge Friedman his concerns regarding the truthfulness of that testimony. In an affidavit dated May 16, 2013 (Respondent's exhibit C), Stoker denied having any discussions with Respondent regarding dismissing one of the two counts after the Court's acceptance of the Plea Agreement.

[2] Walter was arrested on April 3, 2009, and has been continually incarcerated since that date. Following Walter's arrest, his wife remained in communication with Respondent and Walter throughout Respondent's representation.

a real bind if this matter is going to exceed 20 years." Respondent also requested that Stoker consider agreeing to the dismissal of one of the two counts to which Walter had pled guilty and had been found guilty.

Even when confronted with these prior inconsistent statements during the August 4, 2011 hearing, Respondent insisted he had advised Walter he was facing a maximum of 40 years imprisonment if he entered into the Plea Agreement.

Given the content and timing of Respondent's prior inconsistent statements, and his actual knowledge of their existence, the Panel finds Respondent's statements in his May 2, 2011 affidavit and/or during his testimony at the August 4, 2011 hearing regarding the advice he had provided to Walter as to the maximum possible period of incarceration he was facing if he entered into the Plea Agreement constituted intentional misrepresentations of fact.

15. At the conclusion of the hearing on August 4, 2011, after Stoker conceded that Respondent had provided ineffective assistance to Walter, Judge Friedman found that "Mr. Walter did not receive competent counsel" and "because of that the plea should be allowed to be vacated." Judge Friedman further stated that "[i]t's obvious to the Court that Mr. Bonney is not at all familiar with procedures in handling criminal cases in this court. How any lawyer can come in here and say that after signing a plea agreement that he still hoped to negotiate and dismiss one of the counts is simply something that I have never seen happen and I have been doing this for a long time."

16. By Memorandum Order entered on August 5, 2011, Judge Friedman vacated Walter's guilty plea and prison sentence on the basis of Respondent's ineffective assistance of counsel that resulted in Walter's entry of an involuntary guilty plea. The Memorandum Order includes a finding that through either "oversight or misinterpretation of the law," Respondent had provided

7

Walter with "materially incorrect advice" regarding the maximum punishment he could receive which resulted in Walter entering an involuntary guilty plea and receiving a prison sentence in excess of the maximum sentence Respondent had advised him was allowable[3].

17. Following the vacating of Walter's guilty plea and sentence, all of the original 10 counts of receipt or possession of child pornography were reinstated. Walter entered into a new plea agreement pursuant to which he agreed to plead guilty to 2 counts of receiving child pornography and the United States agreed to move to dismiss the 8 remaining counts. The Court accepted the plea agreement and Walter's pleas of guilty to two counts of receiving child pornography and was found guilty of those two offenses. A Presentence Investigation Report was subsequently issued setting out a sentencing guideline range of 262-327 months imprisonment. Walter's new counsel objected to the sentencing guideline calculations on several grounds, including enhancements premised on a pattern of sexual abuse or exploitation of a child and distribution of materials involving exploitation of a child to which Respondent had not objected. Walter's counsel later withdrew one of his objections in order to preserve Walter's credit for acceptance of responsibility. The balance of the objections were overruled, and on May 16, 2012, Walter was sentenced to 262 months imprisonment.

18. Respondent charged Walter a total fixed fee of $35,000.00 for the representation which was paid in full by the end of May 2009. Respondent disbursed the entire $35,000.00 out of trust no later than June 19, 2009, more than two months prior to the September 8, 2009 sentencing hearing and conclusion of the representation.

12-021-091597

---

[3] Judge Friedman further noted that Walter may have been further prejudiced by Respondent's apparent failure "to have even researched several guideline enhancements . . . .," but found that the issue of Respondent's performance during the sentencing phase had been rendered moot by the Court's finding that Walter's guilty plea had been involuntary.

8

19. Farah J. Burch ("Burch") initially contacted Respondent in November 2010 for assistance in filing for bankruptcy.

20. During their initial consultation, Burch advised Respondent of her co-ownership of certain real estate located at 6413 Natrona Avenue, Norfolk, VA ("Property"), for which she was indebted approximately $154,000. Respondent advised Burch that obtaining a Chapter 7 discharge would be difficult if not impossible due to her ownership interest in the Property. Respondent incorrectly advised her that she could file for a Chapter 7 discharge 90 days after transferring her ownership interest in the Property. Based on that advice, Burch transferred her ownership interest in the Property via deed of gift to her parents recorded on July 1, 2011. Burch provided a copy of the recorded deed of gift to Respondent on or about July 1, 2011.

21. Subsequently, on September 12, 2011, Respondent filed a Chapter 7 Bankruptcy Petition on Burch's behalf in the United States Bankruptcy Court for the Eastern District of Virginia (Norfolk) (Case No. 11-74126-SCS). There were multiple problems with the petition and associated documents filed by Respondent, including:

Respondent did not correctly identify Burch's current employer and instead identified a prior employer and significantly underreported Burch's year-to-date income.

Despite having actual knowledge that Burch had transferred her ownership interest in the Property, Respondent did not disclose the transfer in the Statement of Financial Affairs filed with the petition as required and instead misidentified the Property as an asset on Schedule A (Real Property).

Despite Burch having never been obligated on any mortgage that had been secured by a deed of trust executed against the Property, Respondent: i) listed on Schedule D (Creditors

Holding Secured Claims) that Burch owed a mortgage secured by the Property with a balance of $154,000; and ii) stated Burch's intention to reaffirm that non-existent mortgage debt.

On October 12, 2011, Respondent filed amended Schedules A and D that did not list the Property or mortgage, respectively. However, he did not file an amended Statement of Financial Affairs with the required disclosure of the transfer of the Property.

On October 26, 2011, Respondent filed an amended Schedule I and amended Statement of Financial Affairs in which he again misidentified Burch's current employer. Respondent again failed to make the required disclose of the transfer of the Property in the amended Statement of Financial Affairs.

22. On November 3, 2011, after determining that Burch's transfer of her interest in the Property was avoidable since it had been made without consideration, the Chapter 7 trustee declared Burch's Chapter 7 case an asset case[4].

23. On November 10, 2011, the clerk of the bankruptcy court issued a Notice of Presumed Abuse Under 11 U.S.C. §§ 707(b)(2), and Respondent filed a motion to convert the case to Chapter 13 which was subsequently granted.

24. Respondent did not appear at any of the three meetings of creditors scheduled in Burch's bankruptcy case. Instead, an associate from Respondent's office appeared with Burch. The associate had been licensed to practice law for approximately one year and was not sufficiently familiar with the facts and legal issues in Burch's case, in particular those related to the Property, and was thus unable to address the concerns raised by the Chapter 7 and Chapter 13 trustees, which ultimately resulted in the dismissal of the Chapter 13 case on January 12, 2012. Prior to

---

[4] Respondent incorrectly believed the Chapter 7 trustee had avoided the transfer as a "preferential conveyance," and during the misconduct phase of the hearing of this case disagreed with the Chapter 7 trustee's description of a bankruptcy trustee's asset transfer avoidance powers.

the dismissal, Respondent told the Chapter 13 Trustee that he had "rarely been in the office the past few months" and that he took "full responsibility for any mistakes at the 341 Hearing."

25. Respondent never disclosed in a Statement of Financial Affairs Burch's transfer of the Property as required.

26. Following the dismissal of Burch's bankruptcy case, Respondent advised Burch he would re-file a Chapter 7 Bankruptcy Petition on her behalf "in a few months, so that there will be no issues with regards to the property transfer." The panel finds that advice was materially incorrect based on the testimony of the Chapter 7 and Chapter 13 trustees and applicable law.

27. Following the dismissal of her bankruptcy case, Burch terminated Respondent's representation and hired new counsel who, after determining Burch did not qualify for a Chapter 7 discharge under the applicable Means Test due in part to the transfer of her interest in the Property, filed a Chapter 13 Bankruptcy Petition on behalf of Burch that included in the Statement of Financial Affairs the required disclosure of the transfer of the Property.

## VIOLATIONS OF THE VIRGINIA RULES OF PROFESSIONAL CONDUCT

### 12-021-086444

RULE 1.1 Competence
A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

RULE 1.15 Safekeeping Property
(a) All funds received or held by a lawyer or law firm on behalf of a client, other than reimbursement of advances for costs and expenses, shall be deposited in one or more identifiable escrow accounts maintained at a financial institution in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) funds reasonably sufficient to pay service or other charges or fees imposed by the financial institution may be deposited therein; or
(2) funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, and the portion belonging to the lawyer or law firm must be withdrawn promptly after it is due unless the right of the lawyer or law firm to receive it is

11



disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

RULE 3.3 Candor Toward The Tribunal
(a) A lawyer shall not knowingly:
(1) make a false statement of fact or law to a tribunal;


RULE 8.4 Misconduct
It is professional misconduct for a lawyer to:
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation which reflects adversely on the lawyer's fitness to practice law;

<center>12-021-091597</center>

RULE 1.1 Competence
A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

The Panel then proceeded to the sanctions phase of the hearing during which the bar presented a certified copy of Respondent's disciplinary record and Respondent presented no evidence. **AFTER DUE CONSIDERATION** of the evidence, including the nature of the ethical misconduct committed by Respondent, Respondent's disciplinary history and testimony during the hearing[5], and arguments presented, the Panel reached the unanimous decision that Respondent's license to practice law in the Commonwealth of Virginia should be revoked. Therefore, it is hereby ORDERED that the license of Respondent, John Wesley Bonney, to practice law in the Commonwealth of Virginia, be, and the same hereby is, **REVOKED** effective February 26, 2014.

It is further ORDERED, pursuant to the provisions of Part Six, Section IV, Paragraph 13-29 of the Rules of the Supreme Court of Virginia, that Respondent shall forthwith give notice, by certified mail, return receipt requested, of the revocation of his license to practice law in the

---

[5] The Panel finds much of Respondent's testimony during the misconduct phase of the hearing was totally lacking in credibility, including Respondent's reassertion of the misrepresentation of facts he made in his May 2, 2011 affidavit and August 4, 2011 testimony (See Paragraphs numbered 12 and 13 above).

Commonwealth of Virginia to all clients for whom he is currently handling matters and to all opposing attorneys and presiding judges in pending litigation. Respondent shall also make appropriate arrangements for the disposition of matters then in his care, in conformity with the wishes of his clients. Respondent shall give such notice within 14 days of the effective date of the license revocation, and make such arrangements as are required herein within 45 days of this effective date of the license revocation. Respondent shall furnish proof to the Virginia State Bar within 60 days of the effective date of the license revocation that such notices have been timely given and such arrangements for the disposition of matters made. Issues concerning the adequacy of the notice and the arrangements required herein shall be determined by the Virginia State Bar Disciplinary Board.

Pursuant to Part Six, Section IV, Paragraph 13-9 of the Rules of the Supreme Court of Virginia, the Clerk of the Disciplinary System of the Virginia State Bar shall assess costs.

It is further ORDERED that the Clerk of this Court shall send a copy *teste* of this order to Respondent by regular mail at John Wesley Bonney, Esquire, at The Law Office of John W. Bonney, 5416 Tidewater Drive, Norfolk, VA 23509, his address of record with the Virginia State Bar; and send copies *teste* by regular mail to counsel of record and to Barbara Sayers Lanier, Clerk of the Disciplinary System, Virginia State Bar, Eighth and Main Building, Suite 1500, 707 East Main Street, Richmond, Virginia 23219.

These proceedings were recorded by Biggs & Fleet, Ltd., 125 St. Paul's Blvd., Ste. 309, Norfolk, VA 23510, telephone number (757) 622-2049.

ENTERED this 25th day of March, 2014.

_____
The Honorable H. Thomas Padrick, Jr.
Chief Judge

COPY TESTE:
GEORGE E. SCHAEFER, CLERK
NORFOLK CIRCUIT COURT
BY: _____
Bernadette Monsanto, Deputy Clerk
Authorized to sign on behalf
of George E. Schaefer
Date: 5/1/14

COPY TESTE:
GEORGE E. SCHAEFER, CLERK
NORFOLK CIRCUIT COURT
BY
Deputy Clerk

SEEN:

VIRGINIA STATE BAR

By: *[signature]*
M. Brent Saunders, Esquire
Assistant Bar Counsel

AND

SEEN AND *[handwritten]*:

*[signature]*
Leslie A.T. Haley
Respondent's Counsel